<hr />

JOHN ILLINGWORTH

*v.*

WILLIAM S. DeMOTT et al.

[Filed January 3d, 1900.]

1. Complainant purchased stock through a broker, knowing that he was acting for the seller, and would receive $500 as commission. Complainant paid him $50 after the transaction was closed, and told him he would like to purchase more stock, but made no arrangement as to commissions. Subsequently complainant purchased, through the broker, more of the stock, the broker securing his commissions from the seller; but after the sale complainant gave him an option, in writing, to sell a certain number of shares, and to share equally with him the profit over a certain amount. The broker subsequently made an agreement with another broker, who controlled several shares of the stock, to sell the same to complainant, receiving as his commissions an equal share with the seller of whatever excess they could obtain over a fixed price. In making this trade with complainant the former option,

now valuable, was given up as an inducement to complainant to purchase. Complainant refused to pay the broker any commission, saying his commission must come from the seller.—*Held*, that no agency existed between either broker and complainant, and hence he could not recover any portion of the profits secretly derived by them in the transaction.

2. Where a purchaser of stocks ratifies the sale, he cannot recover from the seller's broker profits made by him, though part of such profits were made by tampering with the purchaser's broker.

3. Though the conduct of a stock broker, acting as the agent of seller's broker, in undertaking to act as the agent of the purchaser without informing him as to his agency for the seller and its terms, is a fraud, which might avoid the entire transaction at the option of the purchaser, still it will not entitle him to recover, as principal, from the agent profits secretly received by him.

Heard on bill, answer, replication and proofs.

The equity upon which complainant bases his claim to decree in this case is the right of a principal to compel his agent to account for profits secretly derived by the agent in the course of the transaction of the business for the principal.

Complainant alleges in his bill the joint application of defendants to act for him in the purchase of stock of an incorporated company and an agreement on his part for the purchase, relying upon their joint representations as to the lowest price at which purchase could be made, which representations are claimed to have been false. He also alleges in the bill that Davett, one of the two defendants, was acting as his special agent in making the purchase under an agreement for compensation for his services. The defendants, DeMott and Davett, who answer separately, each deny any agency for complainant, joint or several, and allege substantially that in the transaction in question—a sale of Prudential insurance stock to the complainant —the defendant Davett was acting not as complainant's agent to purchase, but as the agent to sell for the defendant DeMott, who had control of the sale of the stock in question under an agreement or option given to him by the owner, a Mr. Blanchard, to sell to DeMott or his nominee at a fixed net price—$80,000. The answers of both defendants admit that previous to the sale to complainant an agreement was made between DeMott and

Davett that any profit made on a sale should be equally divided between DeMott, the defendant Davett and a brother of the defendant Julius Davett, a Mr. Emil Davett, who is not a party to the suit. The sale to complainant was effected for $80,000 in cash and one hundred shares of Atha & Illingworth Company stock, the latter shares representing the profit, which, under the agreement, was to be equally divided between the three persons named. Blanchard received the $80,000 in cash directly from the complainant, who delivered the Atha & Illingworth stock to DeMott, supposing, as the bill alleges, that DeMott received it to deliver to Blanchard. Complainant discovering, as he alleges, a few days afterwards, that Blanchard's stock was for sale for $80,000 and that the Atha & Illingworth stock was the profit on the transaction, filed his bill to enjoin DeMott, who still held the stock, from transferring it and for its delivery to him as the secret profits of his agents. There is no prayer in the bill that the sale of the stock be set aside, nor does complainant offer to return the stock purchased. The Atha & Illingworth stock has been sold pending the suit under order of the court, made after hearing the parties, and the proceeds paid into court to abide decree in the suit.

The issue between the parties, as made up on the record, is one of the existence of an agency of the defendants, or either of them, for the complainant in the purchase, and this question of fact was the question argued at the hearing by counsel, the general rule that an agent must account to his principal for secret profits not being disputed.

The facts of the case upon which the question of agency depends require to be stated somewhat at length, as the case is not one of simple employment of an agent to purchase but discloses other circumstances which may affect the right of the complainant to recover any share of the profits of the transaction, even if an agency of some kind for the complainant on the part of either of the defendants be established. And inasmuch as the complainant, in order to establish agency as to Davett, one of the defendants, relies upon the transactions between Davett and himself previous to the purchase in question,

Illingworth v. DeMott.

the statement of facts must include the entire previous relation of the parties so far as disclosed by the evidence.

[Here follows a statement of the facts.]

*Mr. Frank E. Bradner*, for the complainant.

*Mr. James E. Howell*, for the defendants.

EMERY, V. C. (after stating the issues and evidence).

In reference to the question of joint agency of DeMott and Davett, which is raised on the pleadings, it is entirely clear that DeMott in this transaction was not the agent of complainant to purchase the stock for him, and further that complainant understood throughout the negotiations that DeMott so far from being his agent was interested adversely to him, and controlled or claimed to control the stock as seller. If DeMott, as seller, tampered with an agent whom complainant had previously employed to buy, it might afford ground as against DeMott for rescinding the contract of sale, but so long as complainant stands on the sale and ratifies it, there can be no right on his part as purchaser to recover from the seller as money belonging to the purchaser the profits made by the seller, even if part of the seller's profits was made by tampering with complainant's agent. To allow such recovery while the purchaser holds the stock and thus affirms the sale, would be to make another bargain for the parties to the sale as a penalty for fraud in the sale. On this bill, therefore, there is no right to recover from DeMott any portion of the profits he received, upon the theory that he was an agent of the complainant, to whose service in the purchase of the stock complainant was entitled. Nor do I think that as against Davett the complainant has any right to recover the profits which Davett has made in the transaction.

In the first place, the conclusion to be drawn from consideration of the entire evidence bearing upon the dealings between complainant and defendant, in relation to this transaction, is that Davett, in the negotiations, was not an agent or broker of complainant to be paid by him, but was an under-broker for

the seller or the seller's broker (DeMott), who was to be compensated by the latter, and that complainant so understood the relation between himself and Davett. Complainant during the negotiations did commission Davett to communicate to DeMott his offers to purchase and the terms, but this must, under the evidence, be considered not as an original employment creating Davett complainant's agent to purchase, but as the reply or answer made by the complainant through Davett to the offer to sell on other terms previously communicated to complainant by Davett as the agent of DeMott or his principal.

In the second place, the evidence shows that Davett, before any communication with the complainant which could be considered as employing Davett to act for him to any extent or for any purpose as his agent in this transaction, had accepted an employment from DeMott to sell the stock. A broker is primarily the agent of the person who first employs him (*Marsh* v. *Buchan, 1 Dick. Ch. Rep. 595, 596, 604* (*Errors and Appeals, 1890*); *Story Ag.* ¶ *31; 4 Am. & Eng. Encycl. L. (2d ed.) 966*), and as between DeMott and himself, this prior agency for DeMott, the seller, continued to the close of the transaction. If while so employed as seller's agent, under an agreement with him for compensation which virtually gave Davett and not DeMott, his principal, control of the price, Davett undertook subsequently to be also the purchaser's agent to purchase, without fully informing the purchaser as to his agency for the seller and its terms, the acceptance of such subsequent employment without such notice was a fraud, which might avoid the entire transaction if the purchaser chose to revoke and the seller insisted on the sale after notice of his agent's fraud.

But the subsequent dishonest employment for the purchaser could not, as it seems to me, be either a legal or equitable basis for declaring the prior legal agency for the seller revoked, and the subsequent dishonest agency established as the legal agency. To hold that the purchaser, defrauded by dishonesty of this kind in a person who assumed to act as his agent, can recover the profits fraudulently received as money which belongs to him as principal, is to affirm as legal an agency which in its origin was

Illingworth *v.* DeMott.

illegal and dishonest. The remedy of the principal in such case is a rescission of the contract for fraud, or an action to recover the loss he has sustained by reason of the fraud. But he cannot recover as money belonging to him in his character as principal the profits received by an agent who was the seller's agent, and afterwards fraudulently assumed to act as his agent. The case is not one where an agent having been first employed by the purchaser makes secret profits under a subsequent agreement with the seller or his broker. In such case all the illicit profits which he makes while under the first and legal employment, in the course of that employment, belong to the employer under the rule settled both at law and in equity.

In the third place, I think that while complainant in concluding the purchase relied on Davett's assertion that DeMott, or the person for whom DeMott acted as selling broker, ultimately controlled the price, and was misled both by Davett's representations and actions, as to Davett himself being the person who controlled the price, yet the entire evidence shows, as I conclude, that even if there was an agency to some extent assumed by Davett for the complainant in the transaction, the purchase as between complainant and Davett was upon the basis that complainant was not expected to pay Davett any commission or compensation for his services, but that Davett was to be compensated by DeMott. Illingworth dealt for himself in relation to fixing the price, and himself received from Davett, as part of the consideration to him on the purchase, the release of an option Davett held against him, which both parties then considered worth $2,500. In the absence of sufficient explanation, the bargaining as to price by complainant, on the basis of Davett's giving him something, would seem to be conclusive that the relations of the parties at that time were adverse and not confidential. Unless Davett was to receive something from DeMott to compensate him for this surrender, there would seem to be no adequate reason or explanation of the surrender. And in reference to this surrender, the deception or fraud, if any was practiced on complainant, was in Davett's misleading him as to the amount he was to receive from DeMott as a compensation,

and as to Davett's own control, over the price, by his statements and conduct before the bargain was concluded, and by Davett's application to complainant subsequent to the bargain (which, when carried out, was worth over $2,000 to him), to give him $500 or $1,000 for getting complainant the chance to purchase. If this be the correct view of the evidence, and complainant was not to compensate Davett for any services, but Davett was to receive his compensation from the other side, then the rule entitling the principal to recover the compensation so received, as being secret or illicit profits, does not apply, and the fact that the compensation to Davett was greater than complainant expected does not make any part of the compensation complainant's money.

In addition to the above reasons, there is another obstacle to complainant's recovery, on the basis of agency, of the amount received by Davett. The evidence shows that on the evening of the 15th of December complainant received from Mr. Graham the information as to the market price of the Blanchard stock, which led him to believe or suspect that he had been defrauded, and the weight of the evidence shows, also, I think, that complainant went to Davett's office on the following morning, December 16th, and procured the surrender of the old option without complaining of the supposed fraud, and that this complaint was not made until the following day, December 17th. Under these circumstances, the complainant, if entitled to any relief against Davett, would be required to restore or re-instate the surrendered option as an equitable condition, and it is a serious question whether the surrender of the option and acceptance of this benefit from Davett, and giving a new option, after the information from Mr. Graham, does not bar any relief on the basis of agency. But, without deciding the case upon this point, I conclude, upon the whole evidence as to the transactions and relations between Davett and complainant up to the time of the completion of the sale, that there is no right to recover from Julius Davett any portion of these profits which DeMott and the Davetts divided upon the sale of the stock to complainant, upon the claim that Davett was complainant's

agent.  Any.right of recovery which complainant may have.
against either DeMott or Davett must, as it seems to me under
the facts proved, be based not on the affirmance of the sale and .
the existence of an agency for complainant, in which complain-
ant was wholly entitled to Davett's services in the sale and the
profits received by him, but must rest upon the basis of fraud
and misrepresentation in procuring the sale, entitling complain-
ant either to a rescission of the sale, as against DeMott.and
Davett, or an action for damages.   The complainant's bill for
an accounting by either DeMott or Davett, as his agents, must
therefore be dismissed.